Dorothy W. JACKSON et al., individually and on behalf of all others similarly situated, Plaintiffs,

v.

George W. ROMNEY, individually and as Secretary of the Department of Housing and Urban Development, et al., Defendants.

Civ. A. No. 775–72.

United States District Court, District of Columbia.

Feb. 7, 1973.

Michael Valder, G. Dan Bowling, Urban Law Institute, Washington, D. C., for plaintiffs.

Arnold T. Aiken, Leonard W. Belter, Thomas G. Corcoran, Jr., Asst. U. S. Attys., Washington, D. C., for defendants.

OPINION

WILLIAM B. JONES, District Judge.

The named plaintiffs have brought this action on behalf of themselves and all other purchasers [1] of homes in Washington, D. C. whose mortgages are insured under the Federal Housing Administration's (FHA) Existing House Program of § 221(d)(2) of the National Housing Act, 12 U.S.C. § 1715l(d)(2) (1970).[2] The plaintiffs basically seek a

---

1. All the named plaintiffs purchased and moved into their homes prior to December 31, 1971. Complaint, paragraph 3.

2. 12 U.S.C. § 1715l(d)(2) (1970) reads in pertinent part:

To be eligible for insurance under this section, a mortgage shall—

.    .    .    ,    .      .

(2) be secured by property upon which there is located a dwelling conforming

declaratory judgment that § 221(d)(2) obligates the defendants, the Secretary of the Department of Housing and Urban Development (Secretary), the Commissioner and local director of FHA, and the United States, to require, in order for a home to qualify for a § 221(d)(2) mortgage guarantee, that the home meet the housing and other applicable regulations of the District of Columbia, and that the plaintiffs' mortgages were insured under regulations in contravention of § 221(d)(2). In addition, they seek damages to enable the plaintiffs to bring their homes into building code compliance, and to reimburse those plaintiffs who have already repaired their homes or who wish to rescind their contracts.[3]

Jurisdiction is based on 28 U.S.C. §§ 1337, 1346(a)(2), 1361 and 2201–2202 (1970), and 5 U.S.C. §§ 702–704 (1970). The defendants have moved to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted; in the alternative, they have moved for summary judgment.

### I

■■ The claim for damages under the Tucker Act, 28 U.S.C. § 1346(a) (1970),[4] will be treated first. The United States may be sued only to the extent to which it has waived its sovereign immunity. United States v. King, 395 U.S.

1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1965). The plaintiffs assert that their claim for damages under the Tucker Act is based on an Act of Congress, § 221(d)(2), and not upon either a contract or a tort claim.[5] An examination of § 221(d)(2) and other related sections of the National Housing Act, however, reveals that no claim for damages can be founded upon that section.

Section 221(d)(2) nowhere gives the Secretary the authority to reimburse a purchaser of a home whose mortgage is guaranteed under the section (hereafter purchaser) for damages caused by physical defects in the premises. The section merely sets forth the eligibility requirements for the insurance of a mortgage pursuant to the § 221(d)(2) program. No monetary payment from the Secretary to any purchaser is authorized. The entire mortgage insurance application can be processed to completion without the existence of a prospective purchaser. Furthermore, § 221(d)(2) does not authorize the Secretary to reimburse anyone for defects in any home with a mortgage guaranteed under that section.

For these reasons, the instant case varies considerably from those principally relied upon by the plaintiff. In Aycock-Lindsey Corp. v. United States, 171 F.2d 518 (5th Cir. 1948), the plaintiff brought an action under the Tucker Act

---

to applicable standards prescribed by the Secretary under subsection (f) of this section, and meeting the requirements of all State laws, or local ordinances or regulations, relating to the public health or safety, zoning, or otherwise, which may be applicable thereto . . . . .

3. The plaintiffs also seek a mandatory injunction requiring the defendants to notify all § 221(d)(2) purchasers of relief afforded, and to counsel future § 221(d)(2) purchasers. Additionally, a waiver of the mortgage guarantee ceiling is sought for those plaintiffs whose homes cannot be adequately repaired, to enable them to purchase another, satisfactory house. Finally, the appointment of a special master to supervise the relief granted is requested.

4. 28 U.S.C. § 1346(a)(2) provides:
   (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
     *   *   *   *   *
   (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damage in cases not sounding in tort.
   The Court of Claims has exclusive jurisdiction of these claims in excess of $10,-000. 28 U.S.C. § 1491 (1970).

5. Plaintiffs' Opposition to Defendants' Motion to Dismiss 34.

to recover additional subsidies allegedly owed it under the Soil Conservation and Domestic Allotment Act, 16 U.S.C. § 590a, et seq. The Court held that although that Act did not expressly provide that suit could be maintained against the United States for claims arising under it, the general terms of the Tucker Act did provide a jurisdictional basis for the suit. The Act in *Aycock-Lindsey*, however, differed from § 221(d)(2) in one extremely material respect. Section 590a(3) of the Act in that case provided that the. Secretary of Agriculture enter into agreements to furnish financial aid to parties, like Aycock-Lindsey Corp., which would further the purposes of the Act. Thus the United States had entered into an agreement with the plaintiff to pay it subsidies if it assisted in programs authorized by the government. The government claimed these subsidies were mere gratuities, and that no enforceable claim to them could be asserted. In finding jurisdiction under the Tucker Act, the Court found that at least an implied contract had been created, and that the lack of specific statutory language to compel payment of the subsidies was no bar to the suit.

The second care principally relied on by the plaintiffs, National State Bank of Newark v. United States, 357 F.2d 704, 174 Ct.Cl. 872 (1966), is also readily distinguished. In *National State Bank,* the plaintiffs were banks seeking to recover additional mortgage insurance benefits for mortgages they had purchased which had been insured by the FHA under § 207 of the National Housing Act, 12 U.S.C. § 1713 (1964). That section provides that the mortgagee can collect the benefits of the mortgage insurance upon the mortgagor's default by assigning the mortgage to the FHA. The Court then held that the United States was liable for these claims against the FHA under the Tucker Act, absent a specific contrary provision.

Thus, in both *Aycock-Lindsey* and *National State Bank,* the United States or one of its agencies had entered into an agreement with the plaintiff under a statute which authorized disbursement of funds to parties that participated in a program authorized by the statute. Section 221(d)(2), however, makes no mention whatsoever of any disbursements of funds to purchasers like the plaintiffs. The only requirements of the statute are conditions imposed on the Secretary before he may insure a mortgage.

That § 221(d)(2) does not authorize the payment of the damages sought here is confirmed by 12 U.S.C. § 1735b (1970), which does authorize the Secretary to make expenditures to correct defects or compensate home owners in limited circumstances. Home owners with mortgages insured under the § 221(d)(2) Existing House Program, which include the named plaintiffs in this case, are not eligible for compensation.[6]

Moreover, it is apparent that Congress does not view existing legislation as conferring upon the plaintiffs the rights which they seek to assert here. On March 2, 1972, the Senate passed Senate Bill 3248.[7] Section 721 of that bill would have amended § 1735(b) to authorize the Secretary to correct conditions or compensate home owners for defective homes with mortgages insured under § 221(d)(2). The Senate bill was referred to the House Committee on Banking and Currency, but was never reported out. Thus, it is apparent that

---

6. 12 U.S.C. § 1735b (1970) authorizes expenditures or compensation for defects found in buildings for which the mortgage insurance is approved prior to the start of construction. All of the plaintiffs purchased existing homes. Complaint, paragraphs 10–39. Section 1735b(b) authorizes expenditures to correct, or compensate owners, for defects in homes with mortgages insured pursuant to § 235 of the National Housing Act, 12 U.S.C. § 1715z (1970). See Bailey v. Romney, (D.D.C. Dec. 18, 1972).

7. S. 3248, 92d Cong., 2d Sess. (1971) ; 118 Cong.Rec. S. 3152 (daily ed. March 2, 1972).

at least the Senate would regard § 221(d)(2) as not authorizing the payments sought by the plaintiffs here.

This last expression of Congressional intent, when coupled with the general principles governing suits brought with the Tucker Act as the asserted jurisdictional basis, requires that the plaintiffs' claims for damages be dismissed for lack of jurisdiction.

II

The plaintiffs also seek a declaratory judgment that the present regulations under which the Secretary insures mortgages are invalid because they do not meet the mandate of § 221(d)(2) by requiring compliance with local health or safety codes before the insurance issues. An injunction requiring such compliance is also sought.

■ Assuming for the moment that this Court has jurisdiction to decide these issues under 28 U.S.C. §§ 1337, 1361, and 2201–2202, and 5 U.S.C. § 702–704 (1970), the Court finds that the plaintiffs lack standing to assert those claims. The relief the plaintiffs seek is a declaratory judgment that the present regulations of HUD with respect to § 221(d)(2) mortgages are invalid. All of the named plaintiffs' homes have mortgages which have been insured under prior regulations.[8]

■ Thus it appears that the plaintiffs do not meet even the liberalized standing concepts announced in recent years by the Supreme Court. The plain-

tiffs must show, for standing under 5 U.S.C. § 702, that the action they challenge caused them injury in fact to an interest arguably within the zone of interests to be protected or regulated by the statute. Sierra Club v. Morton, 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).[9] The party seeking review must be among those injured by the action. Id. at 735, 92 S.Ct. 1361. The plaintiffs have mortgages that have been insured by HUD. The alleged current failure of HUD to promulgate proper regulations in compliance with the mandate of § 221(d)(2) can inflict no harm upon them.

Likewise, the plaintiffs have no standing to assert claims under 28 U.S.C. § 1337 or § 1361. Once again, the plaintiffs are not suffering any injury from any action of the Secretary relative to current § 221(d)(2) regulations. The plaintiffs do not have such a "personal stake in the outcome of the controversy," Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), that will insure that "the dispute sought to be adjudicated will be presented in an adversary context." Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L. Ed.2d 947 (1968).[10] Therefore the complaint must be dismissed insofar as it seeks relief regarding current HUD practices.

III

■ Finally, the plaintiffs seek a declaratory judgment that their mortgages

---

8. The current HUD regulations, HUD Circular HPMC–FHA 4005.19, were issued February 8, 1972. All the plaintiffs purchased their homes prior to that date. See note 1, *supra*.

9. See also Blackhawk Heating & Plumbing Co. v. Driver, 140 U.S.App.D.C. 31, 34, 433 F.2d 1137, 1140 (1970). Peoples v. United States Dep't of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970), principally relied on by the plaintiffs, does not hold otherwise. In *Peoples*, a number of poor people brought an action challenging the administration of the food stamp program. The Court granted them standing as intended beneficiaries of the

statute. The plaintiffs, however, were actual or potential recipients of the benefits of the program. The named plaintiffs in the instant case could not benefit from a *declaratory judgment* that current HUD regulations are invalid because all of their mortgages were insured under prior regulations. Moreover, even if the plaintiffs were granted standing to assert this claim, the complaint would still fail to state a claim upon which relief could be granted. See Part III, *infra*.

10. *See also* Sierra Club v. Morton, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed. 2d 636 (1972).

were insured in contravention of § 221(d)(2) because compliance with the local building code was not required before the insurance issued. Assuming that the plaintiffs have standing to raise this issue and that the Court has jurisdiction under 28 U.S.C. §§ 1337, 1361 and 5 U.S.C. §§ 702–704 to hear the claim, this portion of the complaint must be dismissed for failure to state a claim upon which relief may be granted.

In United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), the plaintiff-purchaser of a home with a mortgage insured pursuant to § 203 of the National Housing Act, 12 U.S.C. § 1709 (1970), brought an action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for negligent misrepresentation by the FHA in its inspection and appraisal of the home.[11] The Court, after holding § 1346(b) inapplicable to negligent misrepresentations, went on to discuss the allegation that FHA owed the plaintiffs a duty to accurately appraise their home, 366 U.S. at 708–709, 81 S.Ct. at 1301:

> [I]t had been recognized in Congress that FHA appraisals would be a matter of public record, and would thus inure, incidentally, to the benefit of prospective home purchasers . . . . But at the same time, it was repeatedly emphasized that the primary and predominant objective of the appraisal system was the "protection of the Government and its insurance funds" [citing H.R.Conf.Rep. No. 2271, 83rd Cong., 2d Sess., p. 66]; that the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees [citing 78

Cong.Rec. 11981]; and that "there is no legal relationship between the FHA and the individual mortgagor" [citing H.R.Cong.Rep. No. 2271, 83rd Cong., 2d Sess. pp. 66–67]. Never once was it even intimated that, by an FHA appraisal, the Government would, in any sense, represent or guarantee to the purchaser that he was receiving a certain value for his money. (footnotes omitted)

The plaintiffs attempt to distinguish *Neustadt* on the grounds that the instant suit is not based on negligent misrepresentation and that Neustadt dealt with § 203, not § 221(d)(2).[12] Both grounds essentially are the same—that § 221(d)(2) imposes a duty upon the Secretary to insure mortgages only on properties that conform with local building codes.

*Neustadt* concerned § 203 and § 226 (12 U.S.C. § 1715q), which requires sellers to inform prospective purchasers of the FHA-appraised value. In determining that the FHA did not owe the purchaser a duty of accurate appraisal, the Court could find no Congressional purpose

> to convert the FHA appraisal into a warranty of value, or otherwise to extend to the purchaser any actionable right of redress against the Government in the event of a faulty appraisal. 366 U.S. at 709, 81 S.Ct. at 1302.

The plaintiffs contend that the "local building codes"[13] language of § 221(d)(2) differentiates this case from *Neustadt*. But no reason has been shown to demonstrate that this provision was not enacted for the same purposes as prior restrictions on mortgage guarantees—the protection of the Treasury

---

11. The FHA inspected the home before the issuance of the mortgage guarantee and found no defects that would disqualify it for insurance. Within a month, the walls and ceilings cracked throughout the house. Subsequently it was discovered that poor drainage had caused subsoil to shift beneath the foundation and produce the cracks. United States v. Neustadt, 366 U.S. 696, 698, 700, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

12. Plaintiffs' Opposition to Defendants' Motion to Dismiss 7.

13. Throughout this opinion it has been assumed that building codes are within the scope of "local ordinances or regulations, relating to the public health or safety." § 221(d)(2). The defendants have not contended otherwise.

—with only incidental effects to inure to the benefit of the purchaser.[14] The most recent amendment to § 221(d)(2), Public Law 90–448, 82 Stat. 476, which expanded the availability of § 221(d)(2) funds, was enacted to meet "the housing needs of those families for which the national goal [of a decent home and a suitable living environment] has not become a reality." 12 U.S.C. § 1701t (1970). But H.R.Conf.Rep. 2271, 83d Cong., 2d Sess., quoted by the Court in *Neustadt* to demonstrate that no legal relationship existed between the FHA and the individual mortgagor, also states that "FHA procedures . . . operate for the benefit and protection of the individual home buyer." *Id.* at 66–67, U.S.Code Cong. & Admin. News 1954, p. 2828. Yet the Court still could find no "right of redress against the Government in the event of a faulty appraisal." *Neustadt, supra,* 366 U.S. at 709, 81 S.Ct. at 1302.

Thus, the benefit to be derived by the individual home buyer presumably is that a soundly functioning FHA mortgage guarantee program will make mortgage money more readily available for low and middle income home purchasers. The purpose of restrictions on FHA guarantees is to assure the soundness of the program, which, of course, will incidentally benefit individual mortgagors.

▮ Therefore, this case is not distinguishable from *Neustadt.* The restrictions placed on HUD before it may guarantee a mortgage do not create a cause of action against the Government on behalf of any individual mortgagor. The complaint insofar as it relates to relief sought by reason of allegedly wrongful guarantees of the plaintiffs' mortgages must be dismissed for failure to state a claim upon which relief may be granted.

Although the relief the plaintiffs have sought here has been rejected, this in no way adjudicates any claims which the plaintiffs may wish to assert in the local court against those sellers who sold allegedly defective homes. Any remedy available to the plaintiffs lies in that court, however, and not here. An appropriate Order is being entered with this Opinion.

---

14. The sole Congressional report on the Housing Act of 1959, which added the local codes language, S.Rep.No.924, 86th Cong., 1st Sess. (1959), merely notes that § 221(d)(2) is amended to increase the maximum mortgage guarantee available, and to make eligible other "dwellings which meet FHA minimum property standards and appropriate state and local housing ordinances or regulations." *Id.* at 13, U.S.Code Cong. & Admin.News, p. 2857.