**Charles V. CASON et al., Plaintiffs,**

**v.**

**UNITED STATES of America et al., Defendants.**

**Civ. A. No. 19025-2.**

United States District Court,
W. D. Missouri, W. D.

July 8, 1974.

James A. Kushner of The Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for plaintiffs.

Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER DISMISSING COMPLAINT

COLLINSON, District Judge.

This action is based on 12 U.S.C. §§ 1709 and 1715*l*(d)(2) (1970), two home mortgage insurance programs under the National Housing Act, 12 U.S.C. § 1701 et seq. (1970). Plaintiffs are persons who have purchased homes in Kansas City, Missouri, and have mortgages insured by the Federal Housing Administration (FHA) of the Department of Housing and Urban Development (HUD) under sections 1709 and 1715*l*(d)(2). Defendants are the United States, the Secretary of HUD (Secretary), the Commissioner of the FHA (Commissioner),[1] and other HUD and FHA officials.

The complaint alleges the following facts: Plaintiffs purchased homes in Kansas City, Missouri. The mortgages on those homes were insured by the FHA under sections 1709 and 1715*l*(d)(2). Upon the application of various approved mortgagee-lending institutions, the FHA issued conditional mortgage insurance commitments. Before issuing the conditional commitments, the FHA through its employees or agents inspected and appraised the homes eventually purchased by plaintiffs. The inspections and appraisals were made in complete disregard of the

[1]. The Commissioner is also a HUD Assistant Secretary for Housing Production and Mortgage Credit. 24 C.F.R. § 200.40 (1973).

operational ability and condition of the major systems of the homes, or were made negligently, or were made without regard to the Health and Housing Code of Kansas City. After entering into occupancy of the homes, plaintiffs discovered defects in the major systems of the homes. Plaintiffs were forced to expend money to effect repairs and were damaged in other specific ways.

Based on these allegations, plaintiffs seek relief in two forms. First, plaintiffs seek to recover damages under the Tucker Act, 28 U.S.C. § 1346(a)(2) and (b) (1970). Secondly, plaintiffs pray for relief in the nature of mandamus under 28 U.S.C. § 1361 (1970).

The action is now before the Court on defendants' motion to dismiss, on the parties' cross-motions for summary judgment, and on plaintiffs' motion to reconsider the Court's previous partial summary judgment on the claim for damages. Before considering these motions, the Court will briefly review the two home mortgage insurance programs in question.

### I. *The Statutory and Regulatory Scheme*

As noted, this action concerns two FHA home mortgage insurance programs, 12 U.S.C. §§ 1709 and 1715*l*(d)(2) (1970), under the National Housing Act, 12 U.S.C. § 1701 et seq. (1970).

The first program is established by 12 U.S.C. § 1709 (1970). This section authorizes the FHA to insure partial repayment of loans secured by mortgages executed to finance the purchase of private residential properties.[2] The mort- gage, the mortgagor, and the property must meet certain eligibility requirements before the FHA insurance is available.[3] The mortgage cannot exceed the lesser of either a certain dollar amount or the sum of certain percentages of the Commissioner's appraised value of the property.[4] The maturity and interest rates are also limited.[5] The mortgage must be held by a qualified lending institution.[6] The mortgagor must make a down-payment of at least three per cent of the Commissioner's estimate of the cost of acquisition.[7] The mortgagor must establish that the mortgaged property will be free of all liens save the insured mortgage; that his income is adequate and stable; and that he has a satisfactory credit standing.[8] The property must be held in fee simple or be a leasehold of certain duration.[9] A dwelling unit designed principally for residential use of not more than four families must be on the property.[10] *The buildings on the property must conform with standards prescribed by the Commissioner.*[11] The mortgagee is required to pay the FHA a mortgage insurance premium in consideration of the contract of insurance.[12]

The second program is established by 12 U.S.C. § 1715*l* (1970). "This section is designed to assist private industry in providing housing for low and moderate income families and displaced persons."[13] The FHA is authorized by this section to insure in part repayment of loans secured by mortgages executed to finance the purchase of private residential properties[14] and other residential properties.[15] The mortgage, the mortgagor, and the property are subject to

---

2. 12 U.S.C. § 1709(a) (1970).

3. 12 U.S.C. § 1709(b)(1) (1970); 24 C.F.R. §§ 203.1–203.9 (1973).

4. 12 U.S.C. § 1709(b)(2) (1970); 24 C.F.R. § 203.18 (1973).

5. 12 U.S.C. § 1709(b)(3) (1970); 24 C.F.R. §§ 203.17, 203.20 (1973).

6. 12 U.S.C. § 1709(b)(1) (1970); 24 C.F.R. §§ 203.1–203.9 (1973).

7. 12 U.S.C. § 1709(b)(9) (1970); 24 C.F.R. § 203.19 (1973).

8. 24 C.F.R. §§ 203.32–203.34 (1973).

9. *Id.* § 203.37.

10. *Id.* § 203.38.

11. *Id.* § 203.39.

12. 12 U.S.C. § 1709(c) (1970); 24 C.F.R. §§ 203.251(k), 203.260–203.278 (1973).

13. 12 U.S.C. § 1715*l*(a) (1970).

14. *Id.* § 1715*l*(b) and (d)(2).

15. *Id.* § 1715*l*(b), (d)(3) and (4), and (h).

most of the eligibility requirements under the section 1709 program.[16] There are some differences however. The maximum mortgage amounts are substantially lower for a one-family residence.[17] Within this lower maximum, however, 90 to 100 per cent of the Commissioner's appraised value may be insured for occupant mortgagors.[18] Although a mortgagor buying a one-family dwelling must make a down-payment of three per cent,[19] as in the section 1709 program,[20] a "displaced family"[21] only has to make a down-payment of $200 on a one-family dwelling.[22] This required minimum investment may include amounts covering settlement costs, initial payments for taxes, hazard insurance premiums, mortgage insurance premiums, and other approved prepaid expenses.[23] *The buildings on the mortgaged property must conform to standards prescribed by the Secretary and must meet the requirements of all state laws, or local ordinances or regulations, relating to the public health or safety.*[24]

The FHA procedures in the sections 1709 and 1715l(d)(2) programs are basically the same. "All mortgage insurance programs involve four basic steps. First, applications for insurance; second, commitments for insurance; third, insurance endorsements; and fourth, claims for losses."[25] Applications for mortgage insurance can be made only by approved lending institutions.[26] The application must present sufficient information from which the FHA can determine the eligibility of the mortgage, the mortgagor, and the property.[27] If an application for mortgage insurance meets the eligibility requirements a commitment for insurance is issued and forwarded to the mortgagee setting forth the terms and conditions under which the mortgage transaction will be insured.[28] Two types of commitments can be issued in connection with home mortgages:

(1) *Conditional commitment.* A conditional commitment is requested in a case where the mortgagor is unknown and therefore cannot be specified in the application. The Commissioner agrees to insure a mortgage on specified property in an amount and under the terms specified, provided the property is sold to a purchaser who is satisfactory to the FHA as a borrower.

(2) *Firm commitment.* A firm commitment is requested where the mortgagee desires insurance of a mortgage on specified property with a named mortgagor in an amount and on terms set forth in the commitment.[29]

Upon receipt of an application for insurance, FHA employees or agents inspect and appraise the property. The inspection is to determine whether the property conforms to the standards prescribed by the Commissioner[30] and prescribed by Congress.[31] If the inspection reveals defects, the commitment may require specific repairs as a condition for obtaining mortgage insurance. When all the terms of the commitment are fully met, the mortgagee returns it to the

---

16. 24 C.F.R. § 221.1 (1973).

17. Compare 24 C.F.R. §§ 221.10, 221.11, 221.20 (1973) with 24 C.F.R. § 203.18 (1973).

18. 24 C.F.R. § 221.20(a) (1973).

19. 12 U.S.C. § 1715l(d)(2) (1970); 24 C.F.R. § 221.50(a) (1973).

20. 12 U.S.C. § 1709(b)(9) (1970); 24 C.F.R. § 203.19 (1973).

21. 24 C.F.R. § 221.3 (1973).

22. 12 U.S.C. § 1715l(d)(2) (1970); 24 C.F.R. § 203.50(c)(1) (1973).

23. 12 U.S.C. § 1715l(d)(2) (1970); 24 C.F.R. § 203.54 (1973).

24. 12 U.S.C. § 1715l(d)(2) (1970).

25. 24 C.F.R. § 200.141 (1973).

26. *Id.* §§ 200.142, 203.10.

27. *Id.* §§ 200.143, 203.15.

28. *Id.* §§ 200.146, –.147, and –.149.

29. *Id.* §§ 200.148(a), 203.13.

30. *Id.* §§ 203.39 and 221.1(a).

31. 12 U.S.C. § 1715l(d)(2) (1970).

FHA with the mortgage note, the mortgage, and a request for endorsement of insurance.[32] If the FHA is satisfied that the terms of the commitment have been met, the mortgage note is endorsed and returned to the mortgagee.[33] The endorsement constitutes a contract of insurance.[34]

## II. Standing and Jurisdiction

■ The defendants question the plaintiffs' standing and the Court's jurisdiction. The United States Court of Appeals for the Third Circuit has fully considered these matters in Davis v. Romney, 490 F.2d 1360, 1363–1366 (3rd Cir. 1974), aff'g in part 355 F.Supp. 29 (E.D.Pa.1973). We adopt the reasoning of the court of appeals in concluding that the plaintiffs do have standing in this action and that the Court does have jurisdiction under 28 U.S.C. § 1337 (1970). The Court also has jurisdiction under the Tucker Act, 28 U.S.C. § 1346 (1970).

## III. Damages

On April 5, 1973, the Court granted summary judgment in defendants' favor on plaintiffs' claim for damages under the Tucker Act, 28 U.S.C. § 1346 (1970). Plaintiffs have moved the Court to reconsider the partial summary judgment and to vacate the order granting the partial summary judgment. Plaintiffs' motion will be denied.

In rendering the partial summary judgment, the Court first considered plaintiffs' claim for damages under subsection 1346(a)(2) of the Tucker Act which grants district courts concurrent jurisdiction with the Court of Claims over claims "against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or an act of Congress, or any regulation of an executive department, or upon any express or implied contract of the United States, or for liquidated or unliquidated

damages in cases not sounding in tort." Relying on Davis v. Romney, 355 F. Supp. 29, 45–48 (E.D.Pa.1973), aff'd in part, 490 F.2d 1360 (3rd Cir. 1974), this Court held that the complaint failed to state a claim founded upon an act of Congress for which damages could be awarded.

Plaintiffs now suggest that their claim for damages under subsection 1346(a)(2) is not founded on an act of Congress but on an "express or implied contract of the United States." Plaintiffs advance an express or implied contract theory and a third-party beneficiary theory:

The agreement between the mortgagee and the FHA extending mortgage insurance impliedly covers and involves the mortgagor. The mortgagor takes on the purchase of the home as the down payment is lowered by having the FHA insure the mortgage. The mortgagor as part of his monthly payment pays an FHA insuring premium. Surely the exchange of consideration between the mortgagor-purchaser and the FHA extablishes an expressed contract as well as an implied contract which falls within the purview of the Tucker Act. Furthermore, the mortgagor-purchaser is certainly a third party beneficiary to any agreement which is executed between the mortgagee and FHA. The payment of the mortgage insurance premium by the mortgagor makes him a creditor beneficiary and able to take advantage and enforce any such contract. The fact that he pays the premium demonstrates that the FHA benefits and obligations are directed toward his benefit, along with this is the contractual obligation of FHA to properly appraise and inspect the dwelling. FHA has allegedly breached this basic contractual obligation and is answerable pursuant to 28 U.S.C. 1346(a)(2).

---

32. 24 C.F.R. § 200.150 (1973).

33. *Id.* §§ 200.152, 203.255.

34. *Id.* §§ 200.152, 203.257.

Plaintiffs' Suggestions On Defendants' Motion To Dismiss at 15 (filed April 27, 1971).

█ The invalidity of plaintiffs' premises fatally flaws their contract theories. First, the mortgagor does not pay the insurance premium; it is paid by the mortgagee.[35] Secondly, the FHA has no contractual obligation to inspect and appraise the property. The primary and predominant objective of the FHA's appraisal system is the protection of the Government and its insurance funds. United States v. Neustadt, 366 U.S. 696, 709, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Inspection and appraisal is required by Congress and the relevant HUD and FHA regulations; it is not required by the contract of insurance. Since inspection and appraisal is not a contractual obligation, an improper inspection and appraisal cannot give rise to a claim for breach of contract and cannot support a third-party beneficiary theory.

In rendering the partial summary judgment, the Court secondly considered plaintiffs' claim for damages under subsection 1346(b) of the Tucker Act which grants district courts exclusive jurisdiction "of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable, to the claimant. . . ." Relying on 28 U.S.C. § 2680(h) (1970), which precludes recovery for misrepresentation, and United States v. Neustadt, *supra,* this Court held that the Government could not be held liable to the purchaser of a home who had relied on a negligently improper inspection and appraisal by the FHA. The Court concluded that plaintiffs had failed to state a claim under subsection 1346(b) for which damages could be awarded.

█ Plaintiffs now suggest that their claim for damages under subsection 1346(b) was not based on misrepresentation but simply on the negligence of the FHA in applying and enforcing the appropriate statutes and regulations pertaining to inspections and appraisals. Even on a simple negligence theory plaintiffs have failed to state a claim for which damages could be granted. In order to recover on such a theory, plaintiffs would have to demonstrate that a duty of due care was owed plaintiffs by the FHA in the application and enforcement of the statutes and regulations in question. It is now settled, however, that the primary and predominant objective of the FHA appraisal system is the protection of the Government and its insurance funds; that the mortgage insurance programs do not insure anything other than the repayment of loans made by lender-mortgagees; "and that 'there is no legal relationship between the FHA and the individual mortgagor.'" United States v. Neustadt, *supra* 366 U. S. at 709, 81 S.Ct. at 1301. Although *Neustadt* was based on a different theory of liability, the Court believes that the Supreme Court completely rejected the notion that Congress intended to establish a duty of due care for the benefit of mortgagors such as plaintiffs. *See* Jackson v. Romney, 355 F.Supp. 737, 741–743 (D.D.C.1973); *cf.* Davis v. Romney, 490 F.2d 1360, 1371–1372 (3rd Cir. 1974). In the absence of such a duty, plaintiffs cannot recover damages under a negligence theory.

## IV. *Mandamus and Injunctive Relief*

█ Relief in the nature of mandamus is not available in this action. 28 U.S.C. § 1361 (1970) provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or em-

35. 12 U.S.C. §§ 1709(b)(6) and (c), 1715*l*(d) (1970); 24 C.F.R. §§ 203.260, 221.254 (1973).

ployee of the United States or any agency thereof to perform a duty owed to the plaintiff." Before mandamus relief would be available, the Court would have to hold that the FHA owed plaintiffs the duty to perform a proper inspection and appraisal. Since we have held that such a duty does not exist, plaintiffs have failed to state a claim upon which mandamus relief could be granted.

Injunctive relief also is not available in this action.[36] The difficulty in providing an injunction drawn so that it will provide relief to plaintiffs has been recognized by the United States Court of Appeals for the Third Circuit in Davis v. Romney, 490 F.2d 1360, 1370 (3rd Cir. 1974). Assuming the facts alleged in the complaint to be true, plaintiffs may be entitled to secure administrative compliance with the National Housing Act and HUD–FHA regulations by injunction, but the injunction must be framed to remedy the harm to plaintiffs. The harm to plaintiffs in this instance cannot be remedied by injunction because it is complete—the contracts for insurance have already been issued. The Court has been wholly unable to conceive of an injunction, mandatory or prohibitory, that would be of the slightest aid to plaintiffs. Plaintiffs, therefore, have failed to state a claim upon which injunctive relief can be granted.[37]

## V. *Orders*

For the reasons stated, it is

Ordered that plaintiffs' motion to reconsider the partial summary judgment entered April 5, 1973, is denied;

Ordered that the parties' motions for summary judgment are denied as moot; and

Ordered that the complaint is dismissed for failure to state a claim upon which relief can be granted.

---

36. Plaintiffs have not requested injunctive relief.

37. By motion filed May 2, 1974, plaintiffs requested leave to amend their complaint by

striking the "Fourth Cause of Action" and the prayer for declaratory judgment. This motion was granted on May 20, 1974.