643 F.2d 707
 Charles REYNOLDS and Lois A. Reynolds, his wife, as
individuals and as parents and next friends of
Steven Reynolds, and Steven Reynolds,
individually, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 79-2068.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 27, 1981.
Decided March 9, 1981.
 
 Richard E. Ransom of Smith, Ransom & Gilstrap Law Offices, Albuquerque, N. M., for plaintiffs-appellants.
 R. E. Thompson, U. S. Atty., Albuquerque, N. M., for defendant-appellee.
 Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Charles Reynolds and Lois A. Reynolds, his wife, as individuals and as parents and next friends of Steven Reynolds, a minor, appeal from an order granting the defendant United States of America's motion for judgment on the pleadings for failure to state a claim upon which relief can be granted.
 
 Well Pleaded Facts
 
 2
 Inasmuch as this appeal is from the grant of a Rule 12(b)(6) motion, we must accept as true the material facts alleged in Reynolds' First Amended Complaint. Hospital Building Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976).
 
 
 3
 Armond and Renee Fourton, who reside in rural Taos County, New Mexico, applied for and received financial assistance through the Farmers Home Administration (FmHA), Department of Agriculture, United States of America, to construct a residence on their farm property (the FmHA is an agency of the United States): Tom Ramsey, the Taos County Supervisor for the FmHA, in conjunction with the office of the New Mexico State Director, David W. King, approved the construction and/or permanent mortgage arrangements submitted by the Fourtons; during construction of the Fourton residence, the building contractor installed a heating system equipped by the manufacturer for use of natural gas; during the course of construction and prior to occupancy of the residence on June 14, 1976, the FmHA had inspected the residence and the quality and safety of its construction; about November 1, 1976, the Fourtons departed their new residence for two weeks during which time they arranged for Steven Reynolds to spend his evenings in the home for purpose of its safekeeping; on November 5, 1976, Steven Reynolds was asphyxiated and poisoned by carbon monoxide by reason of the negligent installation of the heating system which was connected to a supply of butane, contrary to the (furnace) manufacturer's specification; the furnace heating system was unsafe as installed, but the FmHA County Inspector, acting pursuant to the mortgage loan, inspected and approved the Fourton residence and the Fourtons relied on the approval; during the construction and/or inspection the FmHA, acting pursuant to its mortgage loan, either unreasonably inspected or failed to inspect the furnace system and this unreasonable conduct caused Steven Reynolds' severe and permanent brain damage and severe and permanent physical paralysis; FmHA should have reasonably anticipated a third person invitee's presence at the Fourton residence; Charles Reynolds and his wife, Lois, have incurred and will incur medical expenses and hospital expenses, as the parents and natural guardians of Steven Reynolds, and have suffered other monetary damages and mental anguish as a direct and proximate result of the FmHA's negligent acts and omissions.
 
 Trial Court Order
 
 4
 The District Court granted the defendant United States of America's motion for judgment on the pleadings following review and consideration of all pleadings and memoranda of the parties.[1] The Court concluded "... that Defendant, through the Farmers Home Administration, owed no duty to inspect for safety to Plaintiff and is, therefore, not liable to Plaintiff as a matter of law;" (R., Vol. I, p. 11).
 
 Issues on Appeal
 
 5
 The issues presented for our review are whether the United States of America, through the FmHA, owed a tort duty of ordinary care to its borrowers' (Fourtons) invitee (Steven Reynolds) to inspect for and disapprove unsafe conditions existing in the residential structure pursuant to FmHA mortgage loan procedures, and (per Government's brief) whether the "misrepresentation" exception of the Federal Tort Claims Act bars the recovery sought by Reynolds.
 
 Discussion
 
 6
 Reynolds brought this action under the Federal Tort Claims Act, 28 U.S.C. § 2674, which provides that the United States shall be liable to tort claimants in the same manner as a private individual under similar circumstances. Jurisdiction in the District Court rested on 28 U.S.C. § 1346(b) which permits suit against the United States:
 
 
 7
 ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 
 
 8
 Thus, Reynolds contend that the issue is whether the material allegations contained in the First Amended Complaint are legally sufficient to state a claim for relief against a private individual. In support thereof, Reynolds rely on Section 324A of the Restatement, Second, Torts (1965) relating to liability to third persons for negligent performance of an undertaking:
 
 
 9
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 
 
 10
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 
 
 11
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 
 
 12
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 
 
 13
 In Moya v. Warren, 544 P.2d 280 (N.M.Ct.App.1975), the Court recognized the applicability of § 324A, supra, in federal tort claim suits involving contractual obligations. In that case, the plaintiff was in the position of a third person. The Court held the defendant owed no duty to the plaintiff, and relied on the well-established rule that in any tort action it is incumbent upon the plaintiff to establish the defendant owed a duty to plaintiff and that the defendant failed to observe the standard of care which the law requires in the performance of that duty.
 
 
 14
 Neither 28 U.S.C. § 2674 (the Federal Tort Claims Act) or 28 U.S.C.A. § 1346(b) provide an independent cause of action. These statutes simply waive the sovereign immunity of the United States and render the Government liable to the same extent as a private individual under like circumstances. No recovery may be had under the Federal Tort Claims Act by virtue of specific exceptions carved out under 28 U.S.C. § 2680, including any claim arising out of misrepresentation. The District Court did not rule that the "misrepresentation" exception applied. Instead, the Court granted judgment predicated on the proposition that the FmHA owed no tort duty of ordinary care to the safety of its borrowers' invitee.
 
 
 15
 On appeal, the Government argues that the District Court correctly found that the Government owed no tort duty to the plaintiffs. In addition, the Government contends that the "misrepresentation" exception of the Tort Claims Act applies and thus bars the claim.
 
 The Housing Act of 1949
 
 16
 Before discussing our disposition of the appeal, we will review the Housing Act of 1949, as amended, in order to probe the nature of the Government's duty involved in the case at bar, and to determine whether the Act provides a basis for recovery based upon Reynolds' First Amended Complaint. In considering these matters, we note that an appellate court may affirm a district court judgment on a basis not relied on by the district court if supported by the record and the law. In Pound v. Insurance Company of North America, 439 F.2d 1059 (10th Cir. 1971) we said: "... we are reminded of our well established appellate maxim that if a trial court's decision is correct upon any proper theory, we will uphold that decision ..." 439 F.2d at p. 1062. See also: Coleman v. Mountain Mesa Uranium Corp., 240 F.2d 12 (10th Cir. 1956); 10 Wright and Miller, Federal Practice and Procedure, § 2716, pp. 439-441.
 
 
 17
 The primary congressional purpose underlying the enactment of the Housing Act of 1949, as amended, is "the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family ..." 42 U.S.C. § 1441 (1970). Title V of the Act declares that such a goal is to be sought for farm families and others living in rural areas who are unable to obtain credit to secure decent housing. It seeks to remedy that condition by extending financial assistance to such persons through loans authorized by the Secretary of Agriculture. 42 U.S.C. § 1471 et seq. Section 502 of the Act authorizes loans if the Secretary determines that the qualified applicants have the ability to repay them in full, with interest, based upon the income and earning capacity of the applicant and his family from the farm and other sources. 42 U.S.C. § 1472(a). The Act specifically declares that the financial assistance authorized is designed to "... enable them to construct, improve, alter, repair or replace dwellings and other farm buildings ... in order to provide them, their tenants, lessees, sharecroppers, and laborers with decent, safe and sanitary living conditions and adequate farm buildings ..." 42 U.S.C. § 1471(a)(1).
 
 
 18
 7 CFR 1802.2(b) reiterates that the primary objectives of FmHA assistance are to achieve the aforesaid stated objectives of the loan and to protect the interests of the government (7 CFR 1822.7(a)) while assisting such families to obtain decent, safe, and sanitary housing. Other significant, relevant regulations are:
 
 7 CFR 1804.3(d)(1) which provides:
 
 19
 ... All new buildings to be constructed and all alterations and repairs to buildings will be planned to conform with good construction practices. All improvements to the property will conform to applicable laws, ordinances, codes, and regulations which relate to safety and the sanitation of buildings.
 
 7 CFR 1804.4(g)(3), which provides:
 
 20
 ... The County Supervisor will inspect development work as frequently as necessary to assure that construction and land development conforms with the plans and specifications. He will make a final inspection at the earliest possible date after completion of the planned development. When several major items are involved, he will make final inspections upon completion of each item.
 
 
 21
 7 CFR 1804.4(g)(3)(i)(a), (b) and (c) provides that the local county supervisor should make inspections at three specific stages of construction and at such other stages as the county supervisor determines proper. The final stage is identified as "When all onsite and offsite development of the structure has been completed and ready for occupancy."
 
 
 22
 In the entire scheme, the inspection procedures and approval of the construction by the FmHA precede and are conditions precedent to loan closing and occupancy.Our Disposition
 
 
 23
 In United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) the Supreme Court held that a home purchaser's claim against the United States for damages resulting from the purchaser's reliance on an inaccurate FHA inspection and appraisal constituted a claim of misrepresentation within the meaning of 28 U.S.C. § 2680(h) and thus not actionable against the United States.
 
 
 24
 The owner of the residence, as seller, had secured an FHA inspection and appraisal in order to insure the availability of FHA mortgage insurance to purchasers who desired to employ that avenue of financing. The FHA inspection-appraisal did not disclose any defects in the structure disqualifying it for mortgage insurance. The purchaser acquired the property on a conditional sales contract for $24,000.00 in reliance on the FHA appraisal of $22,750.00. A FHA insured mortgage was obtained by the purchaser.
 
 
 25
 Following the transaction, the purchaser discovered material defects in the structure. He filed suit against the United States under the Federal Tort Claims Act for the difference between the fair market value of the property and the $24,000.00 purchase price, alleging that the FHA was negligent in conducting the inspection and appraisal.
 
 
 26
 Of particular significance here, the Neustadt Court observed that in all such instances, the government may be said to owe a "specific duty" to obtain and communicate information carefully in order to avoid misleading the intended recipient to his financial harm. However, even though the Court was critical of carelessness by government personnel in performing such functions, still it reasoned that the plain words employed by Congress in limiting the scope of governmental tort liability could not be ignored. The Court squarely held that the "misrepresentation" exception of 28 U.S.C. § 2680(h) applied to the negligent, faulty appraisal which was, of course, predicated on the negligent inspection. The Court stated that Congress did not intend to convert the FHA appraisal into a warranty of value or otherwise extend to a purchaser any actionable redress by reason of negligent inspection-appraisal.
 
 
 27
 In addition to United States v. Neustadt, supra, the "misrepresentation" exception of 28 U.S.C. § 2680(h) has been applied in similar cases involving federal housing programs under circumstances where government employees were found to have practiced false representations which worked to the financial detriment of parties who properly relied thereon. Moon v. Takisaki, 501 F.2d 389 (9th Cir. 1974); United States v. Longo, 464 F.2d 913 (8th Cir. 1972); Thompson v. United States, 408 F.2d 1075 (8th Cir. 1969); Edelman v. Federal Housing Administration, 382 F.2d 594 (2d Cir. 1967); Stanley v. Veterans Administration, 454 F.Supp. 9 (E.D.Pa.1978); Modular Technics Corp. v. South Haven Houses Housing Development Fund Co., 403 F.Supp. 204 (D.N.Y.1975); United States v. Chelsea Towers, Inc., 295 F.Supp. 1242 (D.N.J.1967); United States v. Sherman Gardens Company, 298 F.Supp. 1332 (D.Nev.1967); United States v. Lawrence Towers, Inc., 236 F.Supp. 208 (E.D.N.Y.1964).
 
 
 28
 In United States v. Neustadt, supra, the Court observed:
 
 
 29
 To say, as the Fourth Circuit did, that a claim arises out of "negligence", rather than "misrepresentation", when the loss suffered by the injured party is caused by a breach of a "specific duty" owed by the Government to him, i. e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation", as is clearly, if not conclusively, shown by the authorities set forth in the margin, and which there is every reason to believe Congress had in mind when it placed the word "misrepresentation" before the word "deceit" in § 2680(h). As the Second Circuit observed in Jones v. United States, supra (207 F.2d 563), "deceit" alone would have been sufficient had Congress intended only to except deliberately false representations. 366 U.S. at pp. 706, 707, 81 S.Ct. at 1300.
 
 
 30
 The "misrepresentation" exception of 28 U.S.C. § 2680(h) has been broadly construed to include false representations of any type. In Hall v. United States, 274 F.2d 69 (10th Cir. 1959), suit was brought by owners of livestock alleging that federal agents engaged in testing livestock for brucellosis negligently quarantined the livestock even though they were, in fact, not diseased. The complaint alleged that the livestock owner suffered damages because he was compelled to sell the livestock at less than the fair market value. This Court upheld the trial court's dismissal of the complaint and said:
 
 
 31
 We must then look beyond the literal meaning of the language to ascertain the real cause of complaint. Plaintiff's real claim is that because of the negligent manner in which these tests were made, the result showed that plaintiff's cattle were diseased; whereas, in fact, they were free from disease and that the Government misrepresented the true condition of these cattle. Plaintiff's loss came about when the Government agents misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease. The claim is that this misrepresentation caused plaintiff to sell his cattle at a loss. This stated a cause of action predicated on a misrepresentation. Misrepresentation as used in the exclusionary provision of the Statute was meant to include negligent misrepresentation. 274 F.2d at p. 71.
 
 
 32
 In Cason v. United States, 381 F.Supp. 1362 (W.D.Mo.1974) the Court similarly observed:
 
 
 33
 Plaintiffs now suggest that their claim for damages under subsection 1346(h) was not based on misrepresentation but simply on the negligence of the FHA in applying and enforcing the appropriate statutes and regulations pertaining to inspections and appraisals. Even on a simple negligence theory plaintiffs have failed to state a claim for which damages could be granted. In order to recover on such a theory, plaintiffs would have to demonstrate that a duty of due care was owed plaintiffs by the FHA in the application and enforcement of the statutes and regulations in question. It is now settled, however, that the primary and predominant objective of the FHA appraisal system is the protection of the Government and its insurance funds; that the mortgage insurance programs do not insure anything other than the repayment of loans made by lender-mortgagees; "and that 'there is no legal relationship between the FHA and the individual mortgagor.' " United States v. Neustadt, supra, 366 U.S. at 709, 81 S.Ct. at 1301. Although Neustadt was based on a different theory of liability, the Court believes that the Supreme Court completely rejected the notion that Congress intended to establish a duty of due care for the benefit of mortgagors such as plaintiffs. See Jackson v. Romney, 355 F.Supp. 737, 741-743 (D.D.C.1973); cf. Davis v. Romney, 490 F.2d 1360, 1371-1372 (3d Cir. 1974). In the absence of such a duty, plaintiffs cannot recover damages under a negligence theory. 381 F.Supp. at p. 1367.
 
 
 34
 We must hold that the claim asserted by the plaintiffs-appellants in the instant case arises out of misrepresentation by the FmHA and is, accordingly, not actionable under the "misrepresentation" exception contained in § 2680(h) of the Federal Tort Claims Act. Accord: Irzyk v. United States, 412 F.2d 749 (10th Cir. 1969), where the government was held exempt from liability under § 2680(h) for alleged negligent supervision-inspection of an independent government contractor; Hall v. United States, supra; Saxton v. United States, 456 F.2d 1105 (8th Cir. 1972), where government was held exempt under 28 U.S.C. § 2680(h) by reason of negligent representation that cattle tested were not diseased; Anglo-American and Overseas Corporation v. United States, 242 F.2d 236 (2d Cir. 1957), where government was held exempt under § 2680(h) for negligent misrepresentation following F.D.A. inspection of unpure tomato paste; Clark v. United States, 218 F.2d 446 (9th Cir. 1954), where government was held exempt by § 2680(h) for alleged misrepresentation that a housing project was safe from flood; Adamsville Lumber Company v. Rainey, 348 F.Supp. 373 (W.D.Tenn.1972), where government held exempt under § 2680(h) for alleged FHA misrepresentation to lumber company relative to home purchase being properly insured; Marival, Inc. v. Planes, Inc., 306 F.Supp. 855 (N.D.Ga.1969), where government was held exempt under § 2680(h) where inspector negligently inspected and certified an airplane's airworthiness; and Feffer v. United States, 166 Ct.Cl. 506 (1964), where government held exempt under § 2680(h) for erroneous information given by a U.S.D.A. inspector as to temperature at which viability of seed would be affected.
 
 
 35
 Finally, we observe that sovereign immunity waivers are strictly construed. Hurley v. United States, 624 F.2d 93 (10th Cir. 1980). The United States, as sovereign, may not be sued without its consent and the terms of its consent to be sued define the Court's jurisdiction. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Buck v. United States, 466 F.2d 481 (10th Cir. 1972). In Cort v. Ash, 422 U.S. 66, 84, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975), the Supreme Court stated that while it is the duty of the courts to provide such remedies as are necessary to make effective the congressional purpose, the courts must guard that the remedy sought would aid the primary congressional goal.
 
 
 36
 WE AFFIRM.
 
 
 
 [1]
 While denominated a judgment on the pleadings, dismissal of the complaint lies under Fed.Rules Civ.Proc. rule 12(b)(6), 28 U.S.C. because no answer to the complaint was filed