**BELLEGARDE CUSTOM KITCHENS, Plaintiff,**

v.

**SELECT–A–HOME, INC., et al., Defendants.**

**LaPOINTE BROS., INC., Plaintiff,**

v.

**Rodolphus J. CHABOT et al., Defendants.**

**Civ. Nos. 14–82 to 14–84, 14–122.**

United States District Court, D. Maine, S. D.

Nov. 26, 1974.

Jere R. Clifford, Lewiston, Me., for Bellegarde Custom Kitchens.

Frank E. Southard, Jr., Maurice E. Hebert, Augusta, Me., for LaPointe Bros., Inc.

Peter Mills, U. S. Atty., John B. Wlodkowski, Asst. U. S. Atty., Portland, Me., for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Plaintiffs in these consolidated actions, Bellegarde Custom Kitchens and LaPointe Bros., Inc., are seeking to enforce mechanics liens pursuant to the Maine Mechanics Lien Law, 10 M.R.S.A. § 3251 et seq. Both plaintiffs are subcontractors who furnished material or labor which was used in the construction of residences upon real property mortgaged to the Farmers Home Administration, an agency of the United States of America (hereinafter referred to as the F.H.A.). Bellegarde Custom Kitchens originally filed Civil Nos. 14–82, 14–83 and 14–84 in the Superior Court of Franklin County, Maine, naming as defendants Select-A-Home, Inc. (the contractor who built the homes in question), Richard B. and Marcia K. Leclerc, Gail E. Poulin, and Cleo J. and Sandra A. Dupont (the individual mortgagors) and the F.H.A. LaPointe Bros., Inc. originally filed Civil No. 14–122 in the Superior Court of Kennebec County, Maine, naming as defendants the contractor, Rodolphus J. Chabot, the individual mortgagors, Keith W. and Dorothy M. Parker, and the F.H.A. The complaints contained similar allegations and prayers for relief, requesting that the land in question be sold and the proceeds applied to discharge plaintiffs' liens. *See* 10 M.R.S.A. §§ 3257, 3259. The United States has removed the actions to this Court under 28 U.S.C. §§ 1444 and 1446. In each case, the United States asserts in its answer that the F.H.A. mortgage lien is superior to the plaintiff's mechanics lien and prays that the action as against it be dismissed.

The default of all other defendants for failure to plead or otherwise defend has been entered, and the sole issue to be decided in each case is whether the plaintiff's mechanics lien is to be afforded priority over the F.H.A. mortgage.

## I

There is no dispute as to the relevant facts, which may be briefly summarized:

*The Bellegarde Custom Kitchens actions.* Between May 24 and May 31, 1973, Bellegarde sold and delivered to Select-A-Home kitchen equipment, which was installed in several residences being constructed by Select-A-Home on parcels of land in Jay, Maine owned by an affiliate, Aldea Realty, Inc. On June 5, 1973, Aldea conveyed two of the parcels to the Leclercs and Gail Poulin, who mortgaged this real estate to the F.H.A. by mortgage deeds duly recorded in the Franklin County Registry of Deeds on the same day. On June 15, 1973, Aldea conveyed a third parcel to the Duponts, who also mortgaged the parcel to the F.H.A. by mortgage deed duly recorded in the Franklin County Registry of Deeds on the same day. All three mortgages secured F.H.A. loans for the construction of residences on the mortgaged properties. The United States admits that the F.H.A. took the mortgages with full knowledge of the materials furnished by Bellegarde.

On July 11, 1973, within 60 days after the last of the materials had been furnished, Bellegarde filed in the Franklin County Registry of Deeds the lien certificates prescribed by 10 M.R.S.A. § 3253. On August 21, 1973, within 90 days after the last materials had been furnished, Bellegarde commenced the present actions in the Franklin County

Superior Court as required by 10 M.R.S.A. § 3255. It is conceded that Bellegarde has fulfilled the state statutory prerequisites for enforcing its mechanics liens.

*The LaPointe Bros. action.* Between July 17 and October 1, 1973, LaPointe furnished building materials used in the construction of a residence on land in Oakland, Maine owned by the Parkers. On August 16, 1973, the Parkers gave a second mortgage [1] upon their real estate to the F.H.A. On August 17, 1973, the mortgage deed was duly recorded in the Kennebec County Registry of Deeds. The loan which the mortgage secured was given by the F.H.A. to finance the construction of a residence on the mortgaged property. The United States admits that the F.H.A. took the mortgage with full knowledge of the materials being furnished by LaPointe.

On November 21, 1973, less than 60 days after the last materials had been furnished, LaPointe filed in the Kennebec County Registry of Deeds the lien certificate required by 10 M.R.S.A. § 3253, and on December 13, 1973, within 90 days after the last materials had been furnished, LaPointe filed the present action in the Kennebec County Superior Court in accordance with 10 M.R.S.A. § 3255. It is conceded that LaPointe has fulfilled the state statutory requirements for enforcing its mechanics lien.

## II

Plaintiffs contend that even though their mechanics liens were filed subsequent to the recording of the F.H.A. mortgages, they are entitled to priority both because under the Maine Mechanics Lien Law the lien arises at the time the material or labor is furnished, *see* 10 M.R.S.A. § 3251,[2] and because under the

---

1. LaPointe concedes that a first mortgage upon the real estate given by the Parkers on March 26, 1971 and recorded in the Kennebec County Registry of Deeds on the same date is entitled to priority over its mechanics lien. Fred W. Beal, Inc. v. Allen, 287 F.Supp. 126 (D.Me.1968).

2. 10 M.R.S.A. § 3251 provides in relevant part:

Whoever performs labor or furnishes labor or materials . . . or performs services . . . as an . . . owner-supplier of equipment used in erecting . . . a house . . . by virtue of a contract with or by consent of the owner, has a lien thereon and on the land on which it stands . . . to secure payment thereof . . . ."

doctrine of *Carey v. Boulette,* 158 Me. 204, 182 A.2d 473 (1962), a prior mortgage lien is subordinate to a subsequently obtained mechanics lien when the material or labor was furnished with the "consent" of the prior mortgagee. The United States concedes that application of state law would result in judgment in favor of the plaintiffs. The contention of the United States is that federal, rather than state, law is controlling; that the federal rule governing the priority of liens is "first in time, first in right"; and that under this principle, as it should be applied in these cases, the F.H.A. mortgage liens are superior to the plaintiffs' mechanics liens. For the reasons to be stated, the Court agrees with the position of the United States.

 It is settled, as plaintiffs concede, that federal law governs in determining the rights and obligations of the United States under security instruments such as the F.H.A. mortgages here involved. *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366, 63 S. Ct. 573, 87 L.Ed. 838 (1943); *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950); *T. H. Rogers Lumber Co. v. Apel,* 468 F.2d 14, 17 (10th Cir. 1972); *United States v. First National Bank & Trust Company of Fargo, North Dakota,* 386 F.2d 646, 647 (8th Cir. 1967); *Fred W. Beal, Inc. v. Allen,* n. 1 *supra,* 287 F.Supp. at 128-129.[3] Plaintiffs also agree that, in the absence of a federal statute, the federal rule for determining the relative priority of federal and state-created liens is "first in time, first in right." *Rankin v. Scott,*

12 Wheat. 177, 179, 25 U.S. 177, 6 L.Ed. 592 (1827); *United States v. New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *Director of Revenue, State of Colorado v. United States,* 392 F.2d 307, 313 (10th Cir. 1968); *Southwest Engine Co. v. United States,* 275 F.2d 106, 107 (10th Cir. 1960); *United States v. Latrobe Construction Co.,* 246 F.2d 357 (8th Cir.), cert. denied, 355 U. S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189 (1957); *Fred W. Beal, Inc. v. Allen, supra.*[4] In applying the federal "first in time, first in right" rule, the Supreme Court has consistently held that in order for a nonfederal lien to be entitled to priority over a federal lien, the nonfederal lien must be "choate" at the time the federal lien arises. *United States v. New Britain, supra* 347 U.S. at 84, 74 S.Ct. 367; *United States v. Waddill Co.,* 323 U.S. 353, 356–357, 65 S.Ct. 304, 89 L.Ed. 294 (1945); *United States v. Security Trust & Savings Bank, supra* 340 U.S. at 50, 71 S.Ct. 111. It is also firmly established that this requirement of choateness is met only if "the identity of the lienor, the property subject to the lien, and the amount of the lien are established," *United States v. New Britain, supra* 347 U.S. at 84, 74 S.Ct. at 369, and that a nonfederal lien is not choate until the claim is final and not subject to a judicial contest as to its validity and amount. *United States v. Security Trust & Savings Bank, supra* 340 U.S. at 50, 71 S.Ct. 111. Furthermore, the Supreme Court has made clear that the determination of whether a nonfederal lien is choate at the crucial time must be made in accordance with federal law, and the fact that state law characterizes the lien as choate is not binding

3. As summarized by this Court in *Beal,* "The oft-stated reason for the rule is that the United States, in the exercise of its governmental functions, must be protected by a uniform federal law and should not be subject to the uncertainties which would result from the application of the disparate rules and practices of the various states." 287 F.Supp. at 128 (citations omitted).

4. As this Court pointed out in *Beal,* 287 F. Supp. at 129, the rule of "first in time, first in right," first announced in *Rankin v. Scott, supra,* has been applied to cases involving United States tax liens (*United States v. New Britain, supra*); to cases involving United States mortgage liens (*Director of Revenue, State of Colorado v. United States, supra*); and specifically, as in *Beal,* to give priority to federal mortgage liens over subsequently perefected state mechanics liens (*Southwest Engine Co. v. United States, supra*; *United States v. Latrobe Construction Co., supra*).

on the federal government. United States v. New Britain, *supra* 347 U.S. at 84, 74 S.Ct. 367; United States v. Waddill Co., *supra* 323 U.S. at 356–357, 65 S.Ct. 304.[5]

▮ In the present cases, the record discloses that plaintiffs' mechanics liens were not filed until well after the F.H. A. mortgages were recorded. Although material and labor had been furnished prior to the recording of the F.H.A. mortgages, the mechanics liens were uncertain as to amount and were subject to dissolution if not perfected by the filing of lien certificates and the commencement of enforcement actions within the times prescribed by the Maine Mechanics Lien Law. *See* 10 M.R.S.A. §§ 3253, 3255. The liens were not even close to being perfected, and, clearly, they had not achieved the degree of choateness which would entitle them to priority over the F.H.A. mortgages. T. H. Rogers Lumber Co. v. Apel, *supra*; E. C. Robinson Lumber Co. v. Hughes, 355 F. Supp. 1363, 1368–1370 (E.D.Mo.1972).

In reaching this conclusion, this Court is fully aware that two federal courts have been persuaded that the enactment by Congress of the Federal Tax Lien Act of 1966, Pub.L. 89–719, 80 Stat. 1125, amending 26 U.S.C. § 6323, which subordinated federal tax liens to various other state security interests, including state mechanics liens, evidences a general policy to subordinate all federal liens to liens created by state law. Connecticut Mutual Life Insurance Co. v. Carter, 446 F.2d 136 (5th Cir.), cert. denied, 404 U.S. 1000, 92 S.Ct. 563, 30 L.Ed.2d 553 (1971) (lien for attorneys' fees given priority over F.H.A. mortgage lien); Ault v. Harris, 317 F.Supp. 373 (D.

Alas.1968), aff'd per curiam, 432 F.2d 441 (9th Cir. 1970) (mechanics lien given priority over Small Business Administration mortgage lien). Both of these cases were of the view that if Congress was willing to subordinate the interest of the federal Treasury to local rules in the area of tax collection, the policy considerations which led it to do so should be at least as compelling where the United States is acting "as a mere money-lending agency." Ault v. Harris, *supra* 317 F.Supp. at 375; Connecticut Mutual Life Insurance Co. v. Carter, *supra* 446 F.2d at 139.

▮ This Court, however, cannot agree that the passage of the 1966 Act subordinating tax liens furnishes the slightest indication of an intent of Congress to subordinate all other federal liens to state-created liens. In carefully considered opinions analyzing both the statutory language and the legislative history of the 1966 Act, several courts have made clear that in subordinating federal tax liens to mechanics liens, Congress did not intend similarly to subordinate other federal liens. *See* United States v. General Douglas MacArthur Senior Village, Inc., 470 F.2d 675 (2d Cir. 1972) (federal mortgage lien given priority over local tax lien); T. H. Rogers Lumber Co. v. Apel, *supra* (F.H.A. mortgage lien given priority over mechanics lien); H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, 388 F.2d 156, 160 (4th Cir. 1967), cert. denied, 390 U.S. 1025, 88 S. Ct. 1413, 20 L.Ed.2d 282 (1968) (Small Business Administration mortgage lien given priority over mechanics lien). As the *General Douglas MacArthur* case points out, 470 F.2d at 678, the 1966 Act was passed in response to the report of

---

5. Thus, the Supreme Court stated in *Waddill*, These interpretations of the Virginia statutes, as propositions of state law, are binding. But it is a matter of federal law as to whether a lien created by state statute is sufficiently specific and perfected to raise questions as to the applicability of the priority given the claims of the United States by an act of Congress. If the priority of the United States is ever to be

displaced by a local statutory lien, federal courts must be free to examine the lien's actual legal effect upon the parties. A state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supersede a long standing Congressional declaration of priority. 323 U.S. at 356–357, 65 S.Ct. at 306.

a Special Committee of the American Bar Association which was charged "with the responsibility of making a comprehensive report .. . . regarding the present status of federal liens, and of submitting proposed draft amendments to the lien statutes 'and such other related statutes as appear desirable in order to provide greater equity as between federal tax liens and other lienors and claimants, and to clarify the entire matter.'" 84 ABA Rep. 645 (1959). Although the Special Committee was charged with the responsibility of investigating all federal liens, the proposed legislation related solely to federal tax liens. The 1966 Act put into effect the Special Committee's proposals. The statute itself and the Committee reports of both houses of Congress [6] speak only of federal *tax* liens. There can be little doubt that the Special Committee and the · Congress were aware of the prior precedents giving priority to·other federal liens. Yet the Committee proposed and the Congress enacted legislation which dealt in specific and precise terms only with federal tax liens. Where it is evident that Congress has given careful consideration to the entire problem of federal liens, this Court is unable to conclude that by the passage of a carefully-drawn statute· affecting the priority of federal tax liens Congress intended an implied modification of an established body of law in regard to federal mortgage liens. Moreover, as the court observed in H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, *supra,*

> We cannot say that it is illogical for Congress to deem it desirable to retain a priority. for money it loans, while relinquishing the priority for its tax liens, which represent no financial. outlay. Whatever may be the merits of symmetry in these two quite distinct, if not cognate, areas the argument seems more properly addressed to Congress than to this court. 388 F.2d at 160.

*See also* United States v. General Douglas MacArthur Senior Village, Inc., *supra,* 470 F.2d at 679.

### III

The Court holds that the F.H.A. mortgage liens are entitled to priority over plaintiffs' mechanics liens. .The actions as against the United States must therefore be dismissed.

It is so ordered.

6. S.Rep.No.1708, 89th Cong., 2d Sess. (1966) ; H.R.Rep.No.1884, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin. News, p. 3722 (1966).