**J. S. PURCELL LUMBER
CORPORATION et al.**

v.

**Hannah L. HENSON, etc., et al.**

**Civ. A. No. CA 75–0390–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 10, 1975.

Richard W. Arnold, Jr., Louisa, Va., for plaintiffs.

N. George Metcalf, Asst. U. S. Atty., Richmond, Va., for defendants.

### MEMORANDUM

WARRINER, District Judge.

This is a dispute between lienholders as to which has priority. The United States Government, through Farmer's Home Administration (hereinafter FHA), advanced money to the Hensons to buy a lot and erect a dwelling thereon. FHA secured its loan by a first deed of trust duly recorded under Virginia law.

Subsequently, Purcell Lumber Corporation (hereinafter Purcell), furnished

building materials for the construction of the dwelling and when the payments therefore were not made it duly perfected its mechanics lien under Virginia law.

Though the filing and perfection of the mechanics lien by Purcell was subsequent in time to the recording of the government's deed of trust, both parties concur that under Virginia law the mechanics lien would have priority. The government contends, however, that Virginia law should not apply to affect the priority of a lien claimed by the United States Government and that the federal law recognizes only the rule of "first in time, first in right."

Purcell says the government, having made use of Virginia law to secure its loan by a deed of trust, is bound by Virginia law as to the rights and privileges attendant to that security device. Thus, Purcell says, the deed of trust must be subordinated to Purcell's mechanics lien. The parties stipulated all the facts they deem material and have submitted the case on briefs to a determination on the merits.

The government's brief in support of its motion to dismiss cites, but does not discuss in any meaningful way, a case directly on point. The case is *Bellegarde Custom Kitchens v. Select-A-Home, Inc.,* 385 F.Supp. 318 (S.D.Me.1974). Purcell compounded the federal government's failure to develop the applicability of the case to Virginia law by .failing to mention the case in its reply brief. Neither the government nor Purcell cited or discussed the closest analogous Fourth Circuit decision, *Agsten & Sons, Inc. v. Huntington Trust and Savings Bank,* 388 F.2d 156 (4th Cir. 1968), *cert. denied* 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968).

The amount of money involved in this case is small which may explain the disposition of counsel to give it rather cursory attention. The issue involved, however, is substantial. The issue is: When the federal government seeks the protection of state loan security laws, must it subordinate itself to the rights and privileges afforded by the state in the same manner as private lenders, or is it entitled to special priority because of its public status? Stated differently, when carpenters, plumbers, and building supply houses extend credit on a construction project financed by federal money, are their rights and priorities under state law to be superseded by a "federal law of priority?" The answer under the law is that federal priority prevails.

It would appear that in equity and good conscience a federal agency should not avail itself of a state created security interest, in this case a deed of trust, and yet be privileged to disregard the state ordained order of priority flowing from that instrument. There is an element of deception involved in the use of a deed of trust to secure a loan, the rights and priorities under which are well known in the building industry, when all the while the government does not intend to be bound by those well known rights and priorities. Any truth in labeling act covering this situation would not permit such an opportunity for misunderstanding and financial loss to persist.

Moreover, when the federal government refuses to be bound by state law with respect to priorities, the purpose for which the federal lending agency was created may well be frustrated. In the case of the Farmer's Home Administration, the lending agency in this action, Congress intended that FHA would make loans to marginal and submarginal rural borrowers for the purpose of permitting them to attain a dwelling of their own. See 42 U.S.C. § 1471. This laudable goal can hardly be attained if the construction trade and materialmen realize that their universal right to priority in enforcement of their liens will be subordinated to the government's deed of trust. Indeed, it was the unwillingness of mechanics and materialmen to furnish goods and services in the construction trade without their priority which led to the adoption of mechanic lien laws in Virginia as elsewhere. *See Mathews v. Meyers,* 151 Va. 426, 145 S.E. 352 (1928); *Gilman v. Ryan,* 95 Va. 494, 28 S.E. 875 (1898).

But this Court is not permitted to look to the wisdom of the law, only to its existence. It is clear that the rule of law mandates federal priority under the factual situation existing in this case. District Judge Gignoux of the Southern District of Main in *Bellegarde, supra,* discussed the matter succinctly but fully. In that case the materialmen had complied with all aspects of the perfection of mechanics liens. Were the mortgage holder a private lender, rather than FHA, the mechanics liens clearly would have been superior under the state law of Maine. The law with respect to the priority of mechanics liens in Maine is, for all practical purposes, identical with Virginia's law. In that case, as here, at the time the FHA lien attached, the mechanics' lien was inchoate. *See, United States v. New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). The mechanics' lien becomes "choate" only if the identity of the lienor, the property subject to the lien, and the amount of the lien are established. *United States v. New Britain, supra,* at 84, 74 S.Ct. 367. Under Virginia statute, a mechanics lien, even though "perfected," is still subject to judicial enforcement and contest as to its validity and as to the amount of the lien. Va.Code Ann. § 43–22 (Repl.Vol.1970). Under federal law these conditions make a mechanics lien inchoate. *United States v. Security Savings Bank,* 340 U.S. 47, 50, 71 S.Ct. 111, 95 L.Ed. 53 (1950). The fact that the Commonwealth may consider a mechanics lien choate is not binding on the federal government. *United States v. Waddill Company,* 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945).

Though we suspect the Fifth Circuit Court of Appeals would not agree with the conclusions in *Bellegarde* we must conclude that the Fourth Circuit would concur. In *Connecticut Mutual Life Insurance Co. v. Carter,* 446 F.2d 136 (5th Cir.) *cert. denied* 404 U.S. 1000, 92 S.Ct. 563, 30 L.Ed.2d 553 (1971) the Fifth Circuit noted that in the vital field of tax collection Congress had determined that tax liens of the federal government should be treated, for priority purposes, on a par with other liens and take their place in priority under uniformly applied rules of state law. Federal Tax Lien Act of 1966 (Pub.L. 89–719, 80 Stat. 1125, *amending* 26 U.S.C. § 6323) Judge Morgan, for the majority, in the Fifth Circuit, reasoned that if the Congress was willing to subject the federal lien in the crucial field of tax collection to state laws of priority, it would be "anomalous and contrary to our view of congressional intent" to allow the Farmer's Home Administration, a money lending agency, to prevail in a situation where the federal government as a tax lien holder would have had an inferior security interest. The Ninth Circuit Court of Appeals has reached a similar conclusion. *Ault v. Harris,* 317 F.Supp. 373 (D.Alaska 1968), *affirmed and opinion adopted, Ault v. United States,* 432 F.2d 441 (9th Cir. 1970).

The Fourth Circuit, somewhat reluctantly, reached a different conclusion. In *Agsten and Sons, Inc. v. Huntington Trust and Savings Bank,* 388 F.2d 156 (4th Cir. 1967) *cert. denied* 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968), one of the questions involved was the priority of a Small Business Administration loan over a mechanics lien. As in the instant case, under state law the mechanics lien would have had priority. Judge Sobeloff, for the Court, considered the implications of the Federal Tax Lien Act of 1966 as evidencing a sense of Congress that federal mortgage liens secured under state law should have the priority intended by state law and no more. In refuting this thesis, Judge Sobeloff said:

The language and the legislative history of the statute, however, convince us that Congress did not propose to elevate inchoate mechanics' liens over the federal contractual claims. The terms of the statute and the detailed Committee reports of both houses of Congress speak repeatedly of subordinating federal unrecorded *tax* liens to mechanics' liens, never intimating a de-

sign to broaden the subordination to include other federal claims.

.    .    .    .    .

We cannot say that it is illogical for Congress to deem it desirable to retain a priority for money it loans, while relinquishing the priority for its tax liens, which represent no financial outlay. Whatever may be the merits of symmetry in these two quite distinct, if cognate areas, the argument seems more properly addressed to Congress than to this court.

Though right, equity, good sense, and good commercial practice seem to dictate the contrary, it is clear, as Judge Sobeloff notes, that Congress has not changed the priority rule except in the case of tax liens. Therefore, this Court must hold that the United States' lien secured by its deed of trust has priority over the mechanics lien asserted by Purcell.

This ruling of the Court, however, does not dispose of the action and, hence, the government's motion to dismiss cannot be granted. Whether subordinated to the government's lien, as here ruled, or not, Purcell is entitled to the enforcement of its lien. It was for that purpose that it instituted this action which, on motion of the government, was removed from the state court to this court.

Further, the government is also entitled to enforcement of its lien if the loan be in default. Enforcement in either case may be through judicial sale. If judicial sale is obtained by Purcell, alone, such sale would be subject, it appears, to the government's superior lien and thus, only the equity of redemption and legal title could be conveyed. Also, the question of the amount of the respective liens has not been ascertained, nor the manner in which sale may be effected.

Accordingly, an appropriate order shall issue.