**UNITED STATES of America,**
**Plaintiff,**

v.

**CHESTER HEIGHTS ASSOCIATES, a limited partnership, et al.,**
**Defendants.**

**Civ. A. No. 75–714.**

United States District Court,
D. South Carolina,
Rock Hill Division.

Nov. 12, 1975.
As Amended March 16, 1976.

James D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., for the United States.

W. H. McElwee, North Wilkesboro, N. C., for defendant Lowe's of Shelby, Inc.

James C. Cothran, Jr., Spartanburg, S. C., for Ted Hinson & Sons Building Contractors, Inc.

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT

HEMPHILL, District Judge.

On October 7, 1975, the plaintiff herein, pursuant to provisions of Rule 56, Federal Rules of Civil Procedure, moved the court to enter a summary judgment, interlocutory in character, declaring that the claim of defendant, Lowe's of Shelby, Inc., is subordinate to plaintiff's mortgage as a matter of law. On the same day plaintiff filed its memorandum in support of the motion. By letter of October 14, 1975, W. H. McElwee, Esquire, of the McElwee, Hall and McElwee of North Wilkesboro, North Carolina, advised the Assistant United States Attorney, James D. McCoy, III, Esquire, that "As counsel for Lowe's of Shelby, Inc., I have decided not to oppose your Motion for Partial Summary Judgment. By copy of this letter, I am requesting the Clerk to file a copy of same in the above referenced case file." By letter of November 4, 1975, James C. Cothran, Jr., Esquire, of the firm of Johnson, Smith, Hibbard and Cothran, of Spartanburg, S. C., advised that his firm had no objection to the motion; they represent Ted Hinson and Son Building Contractors, Inc. An affidavit of default dated October 15, 1975, and filed the same date by James D. McCoy, III, Esquire, Assistant United States Attorney, shows that defendants Chester Heights Associates, Delco Mechanical Contractors, Inc., National Plumbing Stores Corporation, Anthony Paint Company, and Stepp Brothers Electrical, Inc., were in default. On October 15, 1975, the Clerk entered default as to such defendants.

This is an action originally commenced May 1, 1975, to foreclose a mortgage, given by Chester Heights Associates to secure its mortgage note, evidencing indebtedness, to C. Douglas Wilson and Company in the original amount of $501,800.00. Defendant Chester Heights Associates is/was a limited partnership organized and existing under the laws of the State of South Carolina. The other defendants were contractors or materialmen furnishing labor or materials. The note and the mortgage were later endorsed to the Secretary of Housing and Urban Development at Washington, D.C. The date of the assignment was 19 September 1974, and said assignment was filed in the Office of the Clerk of Court

for Chester County, South Carolina, in Mortgage Book 461 at page 195. The original mortgage was recorded December 21, 1972, in the Office of Clerk of Court for Chester County, South Carolina, in Mortgage Book 452 at page 263.

Defendant, Lowe's of Shelby, Inc., raised a defense to this foreclosure action which claimed in substance the following: (1) that C. Douglas Wilson & Co. (hereinafter Wilson), the construction lender, has breached the "construction loan agreement" which it had with Chester Heights Associates, the mortgagor-owner of this project, by "negligently and carelessly" making disbursements of loan proceeds when construction of improvements had not reached a certain percentage of completion pursuant to the terms of said agreement; (2) that the "construction loan agreement" together with other ancillary agreements were entered into for the benefit of third parties which include Lowe's; (3) that it was "contemplated" by the parties to said agreement that payments made by Wilson on a percentage of completion basis would furnish an assurance of payment to defendant and others similarly situated for all materials furnished in connection with the construction of this project; (4) that Wilson had constructive knowledge that defendant had furnished materials in connection with the construction of this project, and, as a result thereof, breached a duty to this defendant in failing to withhold advances of loan proceeds until said defendant had been fully paid; (5) that the foregoing breaches of said "construction loan agreement" enabled defendant, Chester Heights, or their contractors to divert funds to other projects or uses; and, (6) that any defense which defendant has against Wilson is also good against plaintiff, assignee of Wilson. Lowe's asks for judgment against the United States for $15,462.85 plus costs and that its lien against such property be declared prior to the mortgage lien of the United States.

## I. RIGHTS AND OBLIGATIONS OF THE PARTIES TO THE CONTRACTS

The so-called "construction loan agreement" referred to by Lowe's is actually called a Building Loan Agreement. This agreement, dated December 20, 1972, contains the terms and conditions for a building loan made by Wilson to Chester Heights. This loan is secured by a mortgage, which was executed and delivered by Chester Heights in favor of Wilson on December 19, 1972, and recorded on December 21, 1972 in the Office of the Clerk of Court for Chester County. The Building Loan Agreement is incorporated into the mortgage by reference.

The mortgage was insured under Section 236 of the National Housing Act (12 U.S.C. § 1715z–1) and the Regulations. The mortgage insurance contract is strictly between the Secretary and the mortgagee Wilson. The Secretary's role as an insurer of this mortgage is accordingly reflected throughout the Building Loan Agreement. The Secretary, however, is not a party to the Building Loan Agreement and, therefore, has no privity of contract or any obligation whatsoever to the mortgagor or any party asserting a claim through the mortgagor under the Building Loan Agreement.

The original mortgagee, Wilson, elected to assign this mortgage to the Secretary as a result of the mortgagor's default under this mortgage pursuant to Section 207(g) of the National Housing Act (12 U.S.C. § 1713(g)). Wilson also assigned all of its rights under the Building Loan Agreement and other collateral agreements to the Secretary pursuant to Section 207(g) of the National Housing Act (12 U.S.C. § 1713(g)). The mortgagor, Chester Heights, failed to cure its default under this mortgage and, as a result thereof, the Secretary instituted foreclosure proceedings pursuant to Section 207(k) of the National Housing Act (12 U.S.C. § 1713(k)).

Lowe's was a subcontractor for this project and alleges that it has ren-

dered services and furnished materials in connection with the construction of this project. It apparently had a contract with the general contractor of this project, Phillips Development Corporation, but had no direct contractual relationship with either the mortgagor or mortgagee of this project.[1] Defendant-subcontractor alleges that the Building Loan Agreement entered into between the borrower and lender was made for its benefit and others similarly situated. Defendant, however, refers to no provision in this agreement where either Chester Heights or Wilson sought or intended to confer a benefit or extinguish an obligation to Defendant, Lowe's. It is not sufficient to show that one is only an incidental beneficiary under such an agreement or that one benefits through the mere operation of the contract. See *Florida v. Wesley Construction Co.*, 316 F.Supp. 490[2] (S.D.Fla.1970). Lowe's also alleges in its defense that it was further contemplated by the parties to the Building Loan Agreement that the purpose of the advances made by Wilson to Chester Heights was to provide an assurance of payment for materials furnished in connection with construction of this project. No such purpose can be ascertained from the terms of the Building Loan Agreement. The intention and purpose of the parties to a contract must be ascertained and determined primarily or largely from the terms, expressions and provisions of the parties to the contract. 17A C.J.S. Contracts § 296(1) p. 69. Extrinsic evidence of the intention of the parties should not be heard and evidence of surrounding circumstances should be admissible only where there is latent ambiguity. 3 Corbin on Contracts § 536 (1960). The Building Loan Agreement contains the terms and conditions for the disbursement of mortgage proceeds from the lender to the borrower and contains no assurance of payment to the general contractor, subcontractor or any other third party.

Lowe's asserts that Wilson breached the Building Loan Agreement[3] by making advances of mortgage proceeds to the mortgagor at times when construction had not reached a certain percentage of completion, which is alleged by the defendant as a requirement under the Building Loan Agreement. Here again defendant is inserting terms into the Building Loan Agreement to which the parties have not agreed. The Building Loan Agreement contains no requirement that the lender's making of advances of mortgage proceeds is conditioned on construction reaching a certain percentage of completion. Rather, paragraph (4)(a) of the Building Loan Agreement provides that the borrower is to make *monthly* applications for advances of mortgage proceeds on FHA Form 2403. These applications for advances with respect to construction items are for amounts equal to (i) the total value of classes of the work acceptably completed; plus (ii) the value of materials and equipment not incorporated in the work, but delivered to and suitably stored at the site; less (iii) 10 percent (holdback) and less prior advances. These advances of mortgage proceeds are made to the mortgagor-borrower, not to the general contractor, subcontractor or other third party, pursuant to the terms of the Building Loan Agreement. Regardless of any violations of the Building Loan Agreement by Wilson, however, it seems that since the mortgagor-borrower defaulted under this agreement, plaintiff owes no duty either to the mortgagor or any third party claiming through the mortgagor. It should be further pointed out that Wilson has warranted in its assignment of mortgage to the Secretary that no act or omission of Wilson has

1. Coincidentally, the President of the general contracting firm was a partner as the mortgagor.

2. In order for one to qualify as a third party beneficiary under a contract, it must be shown that the intent and purpose of the contracting parties was to confer a direct and substantial benefit upon the third party. In the absence of a clear intent to benefit the third person, he cannot sue on the contract. [495]

3. The agreement is before, and has been examined, by the court.

impaired the validity and priority of the first lien created by this mortgage and that there are no offsets or counterclaims against the amounts referred to in the assignment.

█ There is no basis for the assertion by Lowe's, that despite the obvious affiliation, there have been diversions of funds by Chester Heights or Phillips Development. A construction contract has been entered into by Chester Heights and Phillips Development which contains the terms and conditions governing payments made by the owner to the general contractor. Neither Wilson nor the Secretary is a party to this contract and, therefore, owes no obligation to the mortgagor, the general contractor, or this defendant who purports to assert a claim through the mortgagor or general contractor.

The rights and obligations of the parties to the various contracts described above cannot be destroyed or changed by defendant Lowe's allegations of unjust enrichment and estoppel, as theories for recovery under its lien against this property.

## II. THE SECRETARY OWES NO DUTY TO THE MORTGAGOR OR ANY THIRD PARTY CLAIMING THROUGH THE MORTGAGOR

█ The National Housing Act creates no duty owed by the Secretary to either general contractors or subcontractors of insured projects. The leading case defining the rights of third parties· to relief against the Secretary for claims arising under the National Housing Act is *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Although *Neustadt* involved the claim of a purchaser of an existing single family home whose claim as a beneficiary of the housing program is more direct than that of a general contractor or subcontractor, the decision is applicable to all FHA insurance programs and parties. After rejecting plaintiff's claim for relief under the Federal Tort Claims Act, the Court refused to imply a cause of action

against FHA for an alleged violation of a duty to provide an accurate appraisal pursuant to Section 226 of the Act, (12 U.S.C. 1715q) and stated:

> . . . the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees (citing 78 Conf.Rec. 11981); and that "there is no legal relationship between FHA and the individual mortgagor." (Citing H.R.Cong.Rep.No.2271, 83 Cong., 2d Sess., pp. 66–67). 366 U.S. at 709, 81 S.Ct. at 1301.

If there is no relationship between FHA and an insured mortgagor, certainly the general contractor or subcontractor can have no claim.

*Neustadt* has been followed in numerous cases involving multifamily as well as single family insured properties. *Cason et al. v. United States et al.*, 381 F.Supp. 1362 (W.D.Mo.1974) (no duty to owners of single family insured properties); *United States v. Gregory Park Section II, Inc. et al.*, 373 F.Supp. 317 (D.N.J.1974) (no guarantee of profit to owner/developer of a multifamily insured project); *Davis et al. v. Romney et al.*, 490 F.2d 1360 (3rd Cir. 1974) (no duty to reimburse owners of single family insured properties); *Jackson et al. v. Romney et al.*, 355 F.Supp. 737 (D.D.C.1974) *aff'd sub nom. Jackson, et al. v. Lynn, et al.*, 165 U.S.App.D.C. 172, 506 F.2d 233 (1974) (no duty to owners of single family insured properties); *United States v. Chelsea Towers, Inc.*, 295 F.Supp. 1242 (D.N.J.1967) (no duty to mortgagor of insured multifamily project); *United States v. Thompson*, 293 F.Supp. 1307 (E.D.Ark.1967) (no duty to mortgagor of multifamily project); and *White, et al. v. Mutual Ownership Development Foundation, Romney, et al.*, (U.S.D.C.C.D.Calif., slip opinion, December 18, 1972) (no duty owed to tenants of a Section 236 project to enforce provisions of regulatory agreement against mortgagor). *Holiday Park Towne Houses Cooperative v. Kaufman & Broad Homes, Inc., et al.*, (D.C.E.D.Mich., S.D., Civil Action No. 37394, 1974) (no contractual duty to co-

operative-owners for alleged defects in construction); *Massey v. Lynn et al.,* (D.C.E.D.Mich., S.D., Civil Action No. 39822, 1974) (no duty to insured single family homeowners for failure of homes to meet local housing codes).

The Court of Claims in *Housing Corporation of America v. United States,* 468 F.2d 922, 199 Ct.Cl. 705 (1972) concluded a contractor for a low-rent public housing project was not a third-party beneficiary to an agreement between HUD and a local housing authority in which HUD approved the local housing authority's construction contract with plaintiff and thereby agreed to provide funding for construction.

The court in *Trans-Bay Engineers & Builders, Inc. v. James T. Lynn, et al.,* U.S.D.C., D.D.C., 396 F.Supp. 265, denied recovery to a general contractor who was seeking certain sums retained as a "holdback" during construction under the Building Loan Agreement. While the general contractor's theories for recovery included (i) third party beneficiary status under the Building Loan Agreement, (ii) surety nature of the retention fund, (iii) equitable lien and (iv) unjust enrichment, the court held that the general contractor could succeed to no greater rights than that of the mortgagor. Since the mortgagor in *Trans-Bay* defaulted under its Note and Mortgage, as the mortgagor did here, which constituted a default under paragraph (4)(e) of the Building Loan Agreement, neither the mortgagor nor any third party claiming through the mortgagor can claim any entitlement to payment under said agreement. The court in *Trans-Bay* stated that this was crucial distinction between that case and *Travelers Indemnity Co. v. First National State Bank,* 328 F.Supp. 208 (D.N.J.1971) wherein the surety and trustees in bankruptcy of a construction company were found to be creditor beneficiaries under the Building Loan Agreement in a suit for amounts retained as a "holdback" during construction. It is further pointed out in *Trans-Bay* that the *Travelers* court did not consider or did not have before it the limitations in the Building Loan Agreement which are present in that case as well as the instant case. The court in *Trans-Bay* rejected the general contractor's other theories for recovery, stating that there are explicit contractual provisions and undertakings between the parties which cannot be nullified or set aside by the court.

A final distinction between *Travelers* and the instant case is the failure of the mortgagee in the former case to exercise its option under paragraph (9) of the Building Loan Agreement of either terminating the Building Loan Agreement or entering into possession and completing construction upon default prior to completion of construction. The court in *Travelers* found significance in the fact that the mortgagee ". . . stood idly by as the project's completion was effectuated." 328 F.Supp. at 213. Of course, there was no similar failure by Wilson in this case. The Building Loan Agreement was terminated upon the default of Chester Heights and the information provided Wilson indicates that no further advances were made after said default.

 Even if the court were to adopt the law of South Carolina as the applicable Federal common law concerning rights of third-party beneficiaries, *United States v. View Crest Garden Apts., Inc.,* 268 F.2d 380, 383 [4] (9th Cir. 1959), defendant would not have a good defense to this foreclosure action. The South Carolina Supreme Court held that in order for a third party beneficiary to maintain such an action, where a landowner sues for damages suffered through an eminent domain proceeding, it must appear the contracting parties

---

4. "After a default the sole situation presented is one of remedies . . . Now the federal policy is to protect the treasury and to promote the security of federal investment which in turn promotes the prime purse of the Act—to facilitate the building of homes by the use of federal credit—becomes predominant. *Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty cannot be adopted.*" [Emphasis added]. [p. 383]

intended to create a direct, not incidental or consequential benefit to the third party, a stranger to the contract. See *Cothran et al. v. Rock Hill et al.*, 211 S.C. 17, 43 S.E.2d 615 (1947). If such a third party can avail itself of the contract, it must bear the burdens and reap the benefits in accordance with the terms of the contract. *Kingman v. Nationwide Mutual Insurance Co.*, 243 S.C. 405, 134 S.E.2d 217 (1964). The court's duty is to enforce contracts, giving their language its "plain, ordinary and popular sense" and not to write contracts. *Heaton v. State Farm Mutual Automobile Insurance Co.*, 278 F.Supp. 725, 727 (D.S.C.1968).

## III. FEDERAL LAW, NOT STATE LAW, IS APPLICABLE IN DETERMINING THE PRIORITY OF THESE LIENS

██ The United States Court of Appeals for the Sixth Circuit held in *United States v. Helz*, 314 F.2d 301 (6th Cir. 1963) that in cases affecting government money and government credit, federal law is applicable and adopted the rationale set forth in the leading case of *United States v. View Crest Garden Apts., Inc.*, 268 F.2d 380 (9th Cir. 1959), *cert. denied* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (quoted in footnote 4, *supra*).

The Ninth Circuit Court of Appeals has held that federal law is applicable in determining whether or not the United States is bound to comply with state statutory requirements pertaining to post-foreclosure redemption periods. *United States v. Stadium Apartments, Inc.*, 425 F.2d 358 (9th Cir. 1970), *cert. denied* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970). See also *Clark Investment Company v. United States*, 364 F.2d 7 (9th Cir. 1966); *United States v. Flower Manor, Inc.*, 344 F.2d 958 (3rd Cir. 1965); *United States v. Chester Park Apartments, Inc.*, 332 F.2d 1 (8th Cir. 1964); *United States v. Sylacauga Properties, Inc.*, 323 F.2d 487 (5th Cir. 1963). While these cases involve arguments for the application of state law to Federal foreclosure actions, it likewise appears that they stand for the proposition that federal law is to be applied to questions involving HUD/FHA secured interests in a manner to protect the credit of HUD/FHA and to promote the goals of the National Housing Act.

## IV. ABSENT FEDERAL STATUTE, THE FEDERAL RULE FOR DETERMINING PRIORITY OF THESE LIENS IS FIRST IN TIME, FIRST IN RIGHT

██ If there is no controlling Act of Congress, it is for the courts to determine the priorities between the parties. The federal rule for determining priorities between federal and state liens is "first in time, first in right." *Rankin v. Scott*, 12 Wheat. 177, 179, 25 U.S. 177, 6 L.Ed. 592 (1827); *United States v. New Britain*, 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *Director of Revenue, State of Colorado v. United States*, 392 F.2d 307, 313 (10th Cir. 1968); *Southwest Engine Co. v. United States*, 275 F.2d 106, 107 (10th Cir. 1960); *United States v. Latrobe Construction Co.*, 246 F.2d 357 (8th Cir.), *cert. denied* 355 U.S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189 (1957). In applying the federal rule, the United States Supreme Court has held that the non-federal lien to be entitled to priority must be "choate" at the time the federal lien arises. *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *United States v. Waddill Co.*, 323 U.S. 353, 356–357, 65 S.Ct. 304, 89 L.Ed. 294 (1945); *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). In *Bellegarde Custom Kitchens v. Select-a-Home, Inc.*, 385 F.Supp. 318 (D.C.Me.1974), the court stated that the requirement of choateness is met only if "the identity of the lienor, the property subject to the lien, and the amount of the lien are established;" and that a non-federal lien is not choate until the claim is final and not subject to a judicial contest as to its validity and amount. *United States v. Security Trust and Sav-*

*ings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

■ While it is apparent that the above federal rule is applicable in determining the priority of these liens, it should be pointed out that Section 45–252 of the Code of Laws of South Carolina, as amended, provides that a subcontractor who furnishes material for the improvement of real estate in accordance with the owner's authorization, shall have a lien against such property *subject to existing liens of which he has actual or constructive notice.* This would seem to clearly give priority to the Secretary's mortgage lien which actually was recorded prior to the defendant's lien. It should also be noted that if the subcontractor perfects his lien in accordance with Sections 45–254 and 45–259 of the Code of South Carolina, he is entitled to be paid in preference to the general contractor under Section 45–255. Section 45–257 of the Code of Laws of South Carolina also provides that such a lien "shall not avail or be of force against any mortgage actually existing and duly recorded prior to the date of the contract under which the lien is claimed."

By federal standards, defendant's lien is certainly not choate in view of the fact that it is subject to a judicial contest to determine its validity and amount. The case of *Ault v. Harris*, 317 F.Supp. 373 (D.Alaska), *aff'd per curiam* 432 F.2d 441 (9th Cir. 1970) appears to dispute the application of the above rule. The court held in *Ault* that plaintiff's mechanic's lien was prior to a Small Business Administration trust deed recorded after completion of construction. The trust deed, however, was recorded prior to the recording of plaintiff's me-

chanic's lien. The court's basis for this holding was that the Federal Tax Lien Act of 1966 changed previous law by allowing a mechanic's lienor to obtain priority under certain circumstances over a U. S. tax lien when he has priority under state law. Although the Act on its face does not apply to federal mortgages or trust deeds, the court felt by analogy that its principles should be expanded to cover the whole range of federal liens.

In any event, *Ault* applied 26 U.S.C. 6323(b)(7) which gives priority to a lien for repair or improvement only with respect to a "personal residence (containing not more than four dwelling units) occupied by the owner of such residence . . . [and] only if the contract price on the contract with the owner is not more than $1,000." These requirements are clearly not present in the instant case and thus, the Secretary's mortgage lien must be ruled prior to defendant's mechanic's lien.

It thus appears, under all considerations that the lien of the United States is a first lien and prior to the lien of defendant Lowe's of Shelby, Inc., which is subordinate.

As to the question of the priority of other liens, all of which appear to be subordinate to the lien of the United States of America, testimony shall be presented to the court by affidavit, exhibit or otherwise in order that the court may make a proper determination.

Let a copy of this order be served upon all of the defendants at their last known addresses, by mail, by the Clerk of this court, and to any and all attorneys of record.

And it is so ordered.